752 N.W.2d 580 (2008)
276 Neb. 163
McCORD & BURNS LAW FIRM, LLP, appellee,
v.
Michael J. PIUZE and Michael J. Piuze, P.C., doing business as Law Offices of Michael J. Piuze, appellants.
No. S-07-813.
Supreme Court of Nebraska.
July 18, 2008.
*582 Robert W. Mullin, of Lieben, Whitted, Houghton, Slowiaczek & Cavanagh, P.C., L.L.O., Omaha, for appellants.
Jeffry D. Patterson, of Bartle & Geier Law Firm, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.
This appeal presents a fee dispute between two lawyers. One claims that he is owed fees earned in appealing their client's underlying case. The other claims the fee-division agreement was limited to fees relating to trial work and did not include appellate fees.

SUMMARY
Penny Shipler hired Dan L. McCord, acting on behalf of McCord & Burns Law Firm, LLP (collectively McCord), to prosecute a case against General Motors Corporation (GM). Shipler sought damages for injuries she received in a vehicle rollover accident. Upon McCord's recommendation, Shipler also retained Michael J. Piuze, a California attorney with experience prosecuting rollover cases against vehicle manufacturers. Piuze and McCord agreed they would divide attorney fees, with 75 percent to Piuze and 25 percent to McCord.
Following a jury trial and appeal, Shipler settled with GM. After Piuze deducted the attorney fees from the settlement amount, he sent McCord what Piuze believed was McCord's share of the fees. The amount Piuze sent McCord represented 25 percent of the fees relating to the trial phase of the case; it did not include a portion of the fees Piuze received for his work on the appeal. In not sharing the fees relating to the appeal, Piuze relied on a letter he sent McCord stating that the fee-division agreement did not pertain to fees for an appeal or retrial.
McCord disputed the division. He argued that he was also entitled to 25 percent of the fees relating to the appeal. McCord sued Piuze. McCord alleged that Piuze breached the parties' fee-division agreement. The district court entered summary judgment for McCord and awarded him 25 percent of the fees relating to the appeal, and prejudgment interest.
We reverse because we conclude that the fee-division agreement did not include appellate fees and therefore Piuze did not breach the agreement.

BACKGROUND
In September 1997, Shipler, a passenger, was severely injured in a single-vehicle rollover accident. Kenneth Long, the driver of the Chevrolet S-10 Blazer, lost control of the vehicle, causing it to roll several times. Shipler hired McCord to sue Long and GM, the manufacturer of the Blazer, for damages relating to the injuries she sustained in the accident. McCord contacted other lawyers who had experience and expertise in actions against motor vehicle manufacturers for rollover accidents. Piuze was one of the lawyers McCord contacted. McCord recommended to Shipler that she retain Piuze. After meeting with Shipler and McCord, *583 Piuze agreed to represent Shipler in her suit against GM and Long.
Piuze sent McCord a letter dated April 4, 2000 (Referral Letter). The Referral Letter stated in relevant part:
This letter will confirm our agreement regarding the division of attorney's fees, costs, and responsibilities. Your law firm will receive 25% of the attorney's fees, except in medical malpractice cases where the attorney's fees will be 10%.
My office will be solely responsible for advancing costs and for prosecuting the action. Neither my retainer agreement with . . . Shipler nor this agreement pertains to fees for an appeal or a retrial, if they become necessary.
This agreement regarding a division of fees, costs, and responsibilities shall apply to all future cases that your firm refers to my office unless a contrary agreement is reached.
(Emphasis supplied.) McCord signed the bottom of the Referral Letter and returned it to Piuze in June.
When Piuze sent McCord the Referral Letter, he enclosed other documents, including a "Retainer Agreement" (Retainer) and a "Referral Attorney Authorization" (Authorization).
The Retainer stated that Shipler retained Piuze to prosecute her claims against GM and Long. The Retainer also provided that Piuze would receive 40 percent of Shipler's gross recovery for compensatory damages. More important, the Retainer stated, "Fees for services on appeal, if any, . . . will be subject to a special agreement to be negotiated between [Shipler] and [Piuze]." Shipler signed the Retainer on April 16, 2000. Although he was not required to do so, McCord signed the Retainer on May 9. Piuze signed the Retainer on May 17.
Shipler signed the Authorization the same day she signed the Retainer. The Authorization stated that she agreed that Piuze would represent her in her claim against GM and Long. It further provided that she agreed "any fee collected for legal services in regard to [her] claim" would be divided with 75 percent going to Piuze and 25 percent going to McCord. (Emphasis supplied.) McCord signed the Authorization on May 9, 2000, and Piuze signed on May 17.
In September 2003, a jury returned a verdict for Shipler, and the court entered a judgment for $18,583,900. After GM and Long filed appeals, Shipler signed a "Supplemental Retainer Agreement" (Supplemental Retainer). The Supplemental Retainer stated that Shipler retained Piuze to handle the appeal. The Supplemental Retainer further provided, "I agree that [Piuze] shall receive for such professional services an additional ten (10) percent of the amount recovered following the appeal. I understand that the total attorney's fees on the amount recovered will be fifty percent (50%)."
In March 2006, we affirmed the district court's judgment in Shipler's action against GM and Long.[1] After GM moved for rehearing, GM and Shipler entered a settlement agreement providing that GM would pay Shipler a confidential amount and would withdraw its motion for rehearing.
GM delivered a check for the settlement amount to McCord. McCord and Shipler endorsed the check and sent it to Piuze. After Piuze deducted case expenses, he took 50 percent of the net settlement amount. The 50 percent represented the 40 percent identified in the Retainer for trial work and the 10 percent allocated in the Supplemental Retainer for appellate *584 work. Piuze wired funds to McCord's bank account to satisfy McCord's portion of the attorney fees. Although Piuze collected 50 percent of the net settlement amount as attorney fees, he did not send McCord 25 percent of those collected fees. Instead, Piuze sent McCord 25 percent of the 40 percent collected for the trial work. That is, Piuze did not send McCord 25 percent of the 10 percent he collected for the work on appeal.
McCord sued Piuze, alleging that Piuze breached the fee-division agreement. In deciding McCord's motion for summary judgment, the district court stated that the issue was whether the Referral Letter or Authorization was binding. The Referral Letter expressly provided that the fee-division agreement did not pertain to fees for an appeal or a retrial. But the Authorization provided that "any fee collected for legal services in regard to [Shipler's] claim" would be divided with 75 percent to Piuze and 25 percent to McCord. (Emphasis supplied.)
The district court decided that the Referral Letter from Piuze to McCord was a fee-division agreement that was neither disclosed to Shipler in writing nor consented to by Shipler. According to the court, such an agreement violated the Nebraska Code of Professional Responsibility and the Nebraska and California Rules of Professional Conduct. The court therefore determined that the Referral Letter was an unenforceable fee division. The court concluded that the Authorization, which Shipler signed, was the only binding fee-division agreement.
The court further determined that the language, "any fee collected," in the Authorization included all fees, whether they were for trial or appellate work. Therefore, the court concluded that Piuze should have sent McCord 25 percent of all the attorney fees he collected for Shipler's case and not just 25 percent of the fees relating to the trial. The district court granted summary judgment for McCord, and Piuze appealed. We granted McCord's petition to bypass the Court of Appeals.

ASSIGNMENTS OF ERROR
Piuze assigns, restated, that the district court erred in (1) determining the Referral Letter was unenforceable, (2) determining that the Authorization was an enforceable contract for division of attorney fees, (3) "applying the rules of professional conduct to rewrite the contract contrary to the intention of the parties," and (4) awarding prejudgment interest.

STANDARD OF REVIEW
[1,2] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2] In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment is granted and give such party the benefit of all reasonable inferences deducible from the evidence.[3]
[3,4] The interpretation of a contract involves a question of law.[4] When reviewing questions of law, we resolve the questions independently of the conclusions reached by the trial court.[5]

*585 ANALYSIS

DISTRICT COURT'S ANALYSIS
According to the district court, the issue it needed to decide was "whether the . . . Authorization or the Referral . . . Letter is binding." In making that decision, the court considered whether the individual documents complied with ethics rules. The court determined that the applicable ethics provisions were Canon 2, DR. 2-107, of the Nebraska Code of Professional Responsibility; Neb. Ct. R. of Prof. Cond. § 3-501.5(e); and rule 2-200 of the California Rules of Professional Conduct. The court concluded that when read together, these provisions required five elements for an enforceable fee-division agreement:
1. Full disclosure in writing to the client including the terms of the division.
2. The client's written consent to any fee division.
3. The fee division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation.
4. The total fee is not unreasonable or unconscionable.
5. The total fee is not increased solely by reason of the division.
The court decided that only the first two elements were at issue for the summary judgment determination.
According to the district court, McCord, Piuze, and Shipler created a contract to divide attorney fees when they signed the Authorization. The court then found that the Authorization was "the only document that disclosed the division of fees to Shipler and the only division of fees to which she consented." The court further stated, "To the extent Piuze's Referral . . . Letter conflicts with the terms of the . . . Authorization, it is an agreement to divide a fee that is neither disclosed to the client in writing, nor consented to by the client." The court therefore concluded that the Referral Letter was an unenforceable fee division and that the Authorization was the only binding fee-division agreement.
The district court then considered whether the fee-division agreement in the Authorization pertained to fees for appellate work. The court concluded that the agreement included appellate fees, so Piuze owed McCord a portion of those fees.

PARTIES' CONTENTIONS
Piuze contends that the district court erred in deciding that the Referral Letter was unenforceable and in finding that the parties intended to split the fees for appellate work. Piuze argues that the parties' fee-splitting agreement, as evidenced by the Referral Letter, was limited to fees for trial work. Piuze disagrees with the district court's finding that the terms of this agreement were not fully disclosed to Shipler.
Piuze does not claim that Shipler saw the Referral Letter or consented specifically to that document. Instead, we interpret Piuze's argument to be that although Shipler did not see the Referral Letter, Piuze and McCord disclosed their agreement to her and obtained her consent through the Authorization and Retainer she signed. So, rather than considering the Referral Letter and Authorization in isolation as the district court did, Piuze argues that the two documents, and the Retainer, should be construed together. According to Piuze, the Authorization and Retainer fully disclosed to Shipler the terms of the fee-division agreement, including that the agreement was limited to fees for trial work. Piuze asserts that although the Authorization stated he and McCord would split "any fee collected," the only fee under consideration when the parties signed the Authorization was the 40-percent contingent fee for trial work that Shipler had agreed to in the Retainer. Piuze argues that because Shipler signed *586 both the Retainer and the Authorization, she received full disclosure of the parties' agreement to split the fees for the trial work and consented to this agreement.
McCord, of course, disagrees with Piuze's analysis. McCord first contends that the Referral Letter is ambiguous and does not clearly exclude the division of appellate fees. McCord further contends that even if the Referral Letter is unambiguous, it is unenforceable as an undisclosed fee-division agreement. McCord argues that neither the Referral Letter nor "Piuze's interpretation" of the Referral Letter was disclosed to Shipler.[6] Like the district court, McCord maintains that the parties' fee-division agreement is found in the Authorization because that was "the only fee division disclosure actually made to Shipler."[7] McCord claims that the "plain, direct and unambiguous" language of the Authorization creates an agreement to split all attorney fees, including fees for the appellate work.[8] McCord contends that Piuze "breached the written agreement to divide attorney fees."[9]

THE FEE-DIVISION AGREEMENT DID NOT INCLUDE APPELLATE FEES
[5] Because McCord alleges that Piuze breached the fee-division agreement when he failed to give McCord a share of the appellate fees, we must decide whether the fee-division agreement included fees for the appellate work. If the agreement did not include appellate fees, then Piuze has not breached the agreement. Without delving into specific ethics rules or whether the parties' agreements conformed to those rules, we conclude below that Piuze and McCord's fee-division agreement was limited in scope to fees for trial work and did not extend to fees for appellate work.
We first consider the Authorization. The Authorization was drafted from Shipler's viewpoint and states in relevant part:
I understand and agree that my claim [against GM and Long] will be handled by the LAW OFFICES OF MICHAEL J. PIUZE.
I understand and agree that any fee collected for legal services in regard to my claim will be divided as follows:
Seventy-five percent (75%) to the LAW OFFICES OF MICHAEL J. PIUZE
Twenty-five percent (25%) to: Dan McCord (referring attorney).
Shipler signed the Authorization on April 16, 2000, McCord signed on May 9, and Piuze signed on May 17. The Authorization clearly sets out Piuze and McCord's agreement that they will divide the fee for services associated with Shipler's case.
[6] Instruments made in reference to and as part of the same transaction are to be considered and construed together.[10] The Authorization and Retainer were made as part of the same transaction. They concern attorney fees relating to Shipler's lawsuit against GM and Long. And although the Retainer was an agreement between Shipler and Piuze, and although Piuze did not ask McCord to sign the Retainer, McCord signed the document. Shipler, McCord, and Piuze all signed the Authorization on the same day they signed the Retainer. Therefore, to determine the *587 scope of the fee-division agreement in the Authorization, we look to the Retainer.
The Retainer provides that Shipler retained Piuze to prosecute her claims relating to the rollover accident and that as compensation for these services, Piuze would receive 40 percent of Shipler's recovery. The Retainer expressly provides that any fees for services on appeal "will be subject to a special agreement to be negotiated between [Shipler] and [Piuze]." That is, the Retainer only deals with the compensation Piuze would receive for his services relating to the trial, and not compensation for appellate services.
[7] We construe a contract to give effect to the parties' intentions at the time the writing was made.[11] The same day they signed the Authorization, Piuze and McCord each signed the Retainer that provided the only fees to which Shipler had agreed were fees relating to the trial work. Therefore, we conclude that when Piuze and McCord agreed in the Authorization to split "any fees," the only fees under consideration were the trial fees. Contrary to McCord's argument and the district court's finding, we conclude that the fee-division agreement did not encompass appellate fees.
The Referral Letter reiterates that the parties' fee-division agreement did not include fees for appellate work. The Referral Letter expressly states, "Neither my retainer agreement with . . . Shipler nor [the fee-division] agreement pertains to fees for an appeal or a retrial, if they become necessary." McCord signed and returned the Referral Letter to Piuze a month after the parties signed the Authorization and Retainer. If McCord had a different understanding of the parties' agreement or disagreed with the terms as set out in the Referral Letter, he had a chance to object before signing this final document. Instead, McCord signed the Referral Letter, which makes clear that appellate fees are not included in the fee-division agreement.
[8] Without deciding whether the district court correctly identified the elements of an enforceable fee-division agreement under the ethics rules, we note that the parties' agreement was disclosed and consented to by Shipler. Because we conclude that the Authorization and Retainer set out the fee-division agreement, the agreement was disclosed to Shipler when she saw the two documents. And by signing the Authorization and Retainer, she consented to the parties' agreement to split the fees for the trial work. So, any concerns regarding disclosure and consent are put to rest.
Because the parties' fee-division agreement was limited to fees for trial work and did not include appellate fees, Piuze did not breach the agreement when he sent McCord 25 percent of the trial fees but not 25 percent of the appellate fees. Therefore, the district court erred in granting McCord's motion for summary judgment.
We reverse the district court's entry of summary judgment. In light of our reversal, we do not reach Piuze's argument that the court erred in awarding prejudgment interest.

CONCLUSION
We conclude that Piuze and McCord's agreement to divide fees did not encompass the fees that Piuze received for the appellate work (i.e., the additional 10 percent of Shipler's recovery). Piuze did not breach the fee-division agreement when he declined to split the fees relating to the appellate work. We reverse because the *588 district court erred in sustaining McCord's motion for summary judgment.
REVERSED.
STEPHAN, J., not participating.
NOTES
[1] See Shipler v. General Motors Corp., 271 Neb. 194, 710 N.W.2d 807 (2006).
[2] Lexington Ins. Co. v. Entrex Comm. Servs., 275 Neb. 702, 749 N.W.2d 124 (2008).
[3] Id.
[4] See id.
[5] Id.
[6] Brief for appellee at 11.
[7] Id. at 18.
[8] Id. at 33.
[9] Id.
[10] Solar Motors v. First Nat. Bank of Chadron, 249 Neb. 758, 545 N.W.2d 714 (1996). See, also, Gary's Implement v. Bridgeport Tractor Parts, 270 Neb. 286, 702 N.W.2d 355 (2005); Nowak v. Burke Energy Corp., 227 Neb. 463, 418 N.W.2d 236 (1988).
[11] See Baye v. Airlite Plastics Co., 260 Neb. 385, 618 N.W.2d 145 (2000).