Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/28/2018 08:14 AM CDT

Ray Anderson, Inc., a Nebraska corporation,
appellee and cross-appellant, v. Buck's, Inc.,
a Nebraska corporation, appellant
and cross-appellee.

___ N.W.2d ___

Filed July 6, 2018.    No. S-17-816.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

3. **Declaratory Judgments: Appeal and Error.** In an appeal from a declaratory judgment, an appellate court, regarding questions of law, has an obligation to reach its conclusion independently of the conclusion reached by the trial court.

4. **Contracts.** The meaning of a contract and whether a contract is ambiguous are questions of law.

5. ____. In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.

6. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.

7. **Contracts.** The meaning of an ambiguous contract is generally a question of fact.

8. ____. A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.

9. ____. The court must accord clear terms their plain and ordinary meaning as an ordinary or reasonable person would understand them.
10. ____. The fact that the parties have suggested opposite meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.
11. ____. A court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include.
12. ____. Extrinsic evidence is not permitted to explain the terms of a contract that is unambiguous.
13. ____. Instruments made in reference to and as part of the same transaction are to be considered and construed together.
14. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Douglas County: Gary B. Randall, Judge. Affirmed.

Stephen M. Kalhorn, Benjamin W. Hulse, of Blackwell Burke, P.A., and John P. Passarelli, of Kutak Rock, L.L.P., for appellant.

Aaron F. Smeall and Jacob A. Acers, of Smith, Slusky, Pohren & Rogers, L.L.P., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Daugherty, District Judge.

Daugherty, District Judge.
In this declaratory judgment action, the district court for Douglas County determined that a contract between Ray Anderson, Inc. (Anderson), and Buck's, Inc., to supply "BP-branded" motor fuel did not prevent Anderson from contracting with a competitor, Western Oil, Inc., to rebrand fuel sold at some of Anderson's facilities. The court further found that Buck's held a unilateral right to terminate the fuel supply agreement. Upon our de novo review, we reach the same conclusion. Therefore, we affirm.

## BACKGROUND

### Parties and Governing Contracts

Anderson is a Nebraska corporation operating retail gasoline stations and convenience stores in Omaha, Nebraska. Buck's is a Nebraska corporation which also operates retail gasoline stations in Omaha. In addition, Buck's acts as a "jobber" by purchasing fuel from BP Products North America Inc. (BP) and selling BP-branded fuel to individual gasoline stations, including to some of Anderson's stations.

Before Anderson entered into the BP-branded fuel supply contract with Buck's, Anderson was also a "jobber" and had purchased BP-branded gasoline directly from BP. In 2007, Anderson was unable to meet its gasoline sales commitments to BP and incurred $840,000 in volume fees. Buck's agreed to "bail out" Anderson and assumed Anderson's contractual rights and obligations under its "jobber" agreement with BP.

On July 30, 2007, the parties entered into a series of agreements. The parties executed a "Jobber Purchase and Sale Agreement," in which Buck's agreed to (1) pay Anderson $300,000, (2) assume Anderson's $840,000 liability to BP, and (3) assume Anderson's volume sales commitments to BP. The parties also entered into a fuel supply contract entitled the "Subjobber Supply Agreement" (the Agreement), which incorporated a rider entitled the "Electronic Dealer Delivery Plan" (the EDDP). The parties' rights under the Agreement are at issue in this appeal.

In December 2015, Anderson negotiated terms with Western Oil, a competitor of BP, to sell Shell Oil Company-branded gasoline at four of Anderson's stations. Anderson claims that on January 11, 2016, it informed Buck's of its agreement with Western Oil. Buck's issued cease-and-desist letters to Anderson and Western Oil the following day. The letter Buck's sent to Anderson stated:

> Buck's . . . and . . . Anderson executed [the] Agreement
> . . . .

It has been brought to our attention that you may be contemplating the breach of [the] Agreement by entering into a like contract with other suppliers.

. . . .

. . . Paragraph 20(b) of the Agreement imposes upon you an affirmative duty to avoid entering into an agreement with other suppliers, which would breach [the] Agreement.

Anderson filed suit seeking a declaration that it was not prohibited from rebranding under the Agreement, and Buck's counterclaimed, seeking a declaration that the Agreement required Anderson to buy BP-branded fuel and damages for anticipatory repudiation.

### DISTRICT COURT PROCEEDINGS

Anderson's complaint requested the court to declare, pursuant to Nebraska's Uniform Declaratory Judgments Act, Neb. Rev. Stat. §§ 25-21,149 to 25-21,164 (Reissue 2016), the rights of the parties under the Agreement; to find that the Agreement does not prohibit Anderson from withdrawing and rebranding some of its facilities; and to determine that if Anderson sought to terminate the Agreement, it could do so upon reasonable notice.

The answer and counterclaim filed by Buck's alleged that the Agreement requires Anderson to buy BP-branded fuel from Buck's for sale at Omaha-area facilities identified in the Agreement. The counterclaim stated, "Read together, Paragraphs 20(b) and 36 [of the Agreement] impose an affirmative duty on [Anderson] to . . . avoid discontinuing . . . the sale of [Buck's]-supplied BP-branded gasoline." It further stated, "[Anderson's] affirmative duty is extremely important to [Buck's]," and "[t]his re-branding will send the message to potential customers that [Anderson] endorses another brand, and no longer stands by BP." Buck's claimed Anderson's agreement with Western Oil constituted a material breach

of the Agreement and requested declaratory relief, injunctive relief, and monetary damages.

Both parties moved for summary judgment on their declaratory judgment claims, and following a hearing, the district court granted Anderson's motion and denied the motion filed by Buck's. In considering the motion filed by Buck's, the court analyzed provisions within the Agreement, including section 19, titled "Grounds for Termination and Nonrenewal"; section 20(b), found under the section titled "Procedures for Termination or Nonrenewal"; and section 36, titled "Franchise Relationship." The court found it was unclear whether these provisions of the Agreement could be construed together to support the position of Buck's, and stated that "the Agreement itself is, at the very least, ambiguous as to whether Anderson rebranding its stations would violate Section 20(b) of the Agreement." Based upon its review of the Agreement alone, the court denied the motion filed by Buck's.

The court continued its analysis and discussed provisions of the EDDP in reviewing Anderson's motion. The court pointed to section 12 of the EDDP, titled "Independent Business," which provides that "[n]othing herein shall obligate [Buck's] to sell or [Anderson] to purchase products, nor preclude [Anderson] from selling competitive-brand products . . . provided there occurs no infringement of [the] Branded Trade Identities" of Buck's. The court determined that section 12 of the EDDP was clear and unambiguous and that the Agreement and the EDDP must be read together as a whole. The court concluded that "nothing within either the Agreement or the EDDP prohibits Anderson from selling competitive-brand products."

The court then found that even if Buck's interpretation of its rights under the Agreement were correct, the EDDP provides that "in the event of a conflict between [the Agreement and the EDDP], the terms of the [EDDP] shall supersede any conflicting provisions elsewhere." The court found Anderson's

right to rebrand under section 12 of the EDDP controlled over any affirmative duty to avoid rebranding imposed by the Agreement.

In a separate order, the court rejected Anderson's argument that it may terminate the Agreement upon reasonable notice. The court determined that the Agreement grants Buck's "an unambiguous and valid unilateral right of termination." The court stated, "Anderson cannot, by invoking [its] contracted for right to rebrand, also circuitously assume the uncontracted for power to terminate the Agreement."

Buck's appealed, Anderson filed a cross-appeal, and we moved the appeals to our docket.

## ASSIGNMENTS OF ERROR

Buck's assigns, restated, that the district court erred by (1) interpreting the Agreement in a way to permit Anderson to discontinue buying BP-branded fuel from Buck's and commence buying Shell Oil Company-branded fuel from a third-party suppler, notwithstanding affirmative duties imposed upon Anderson by the Agreement; (2) finding that the EDDP released Anderson of its obligation to buy fuel from Buck's and concluding that the EDDP superseded conflicting provisions in the Agreement; and (3) failing to resolve contractual ambiguities through a trial.

On cross-appeal, Anderson assigns that the district court erred by (1) finding that Anderson has no right to terminate the Agreement and the EDDP and (2) failing to find that Anderson can terminate upon reasonable notice.

## STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment

as a matter of law.[1] In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[2]

[3,4] In an appeal from a declaratory judgment, an appellate court, regarding questions of law, has an obligation to reach its conclusion independently of the conclusion reached by the trial court.[3] The meaning of a contract and whether a contract is ambiguous are questions of law.[4]

## ANALYSIS

We first address the appeal filed by Buck's regarding the issue of whether the Agreement and the EDDP prevent Anderson from rebranding fuel sold at some of its stations. We then address Anderson's cross-appeal regarding the issue of whether Anderson has a contractual right to terminate the Agreement. In both appeals, we find the plain language of the Agreement and the EDDP compels affirmance of the district court's decision.

[5-7] In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.[5] A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.[6] The meaning of an ambiguous contract is generally a question of fact.[7]

---

[1] *Walters v. Colford*, 297 Neb. 302, 900 N.W.2d 183 (2017).

[2] *Id.*

[3] *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 268 Neb. 439, 684 N.W.2d 14 (2004).

[4] *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist.*, 291 Neb. 642, 868 N.W.2d 67 (2015).

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8-12] A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.[8] The court must accord clear terms their plain and ordinary meaning as an ordinary or reasonable person would understand them.[9] The fact that the parties have suggested opposite meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.[10] A court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include.[11] Extrinsic evidence is not permitted to explain the terms of a contract that is unambiguous.[12]

BUCK'S APPEAL

The issue in the appeal filed by Buck's is whether the Agreement imposes an affirmative duty upon Anderson not to rebrand. We conclude, as a matter of law, that the terms of the Agreement and the EDDP are unambiguous and do not prevent Anderson from rebranding. As a result, the court did not err when it denied the motion for summary judgment filed by Buck's.

Buck's asserts that numerous provisions in the Agreement preclude Anderson from rebranding. Buck's points to sections 6, 19, 20, and 36 of the Agreement and contends that these provisions require Anderson to sell BP-branded fuel purchased from Buck's and thus prohibit rebranding. Anderson, for its

---

[8] *Frohberg Elec. Co. v. Grossenburg Implement*, 297 Neb. 356, 900 N.W.2d 32 (2017).

[9] *Kasel v. Union Pacific RR. Co.*, 291 Neb. 226, 865 N.W.2d 734 (2015).

[10] *Id.*; *Sack Bros. v. Tri-Valley Co-op.*, 260 Neb. 312, 616 N.W.2d 786 (2000).

[11] *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011); *Gary's Implement v. Bridgeport Tractor Parts*, 270 Neb. 286, 702 N.W.2d 355 (2005).

[12] *In re Claims Against Pierce Elevator*, 291 Neb. 798, 868 N.W.2d 781 (2015).

part, makes counterarguments that those same terms of the Agreement do not prohibit it from selling fuel purchased from another source.

[13] Our inquiry as to the parties' agreement concerning rebranding, however, is not limited to the Agreement. The parties also entered into the EDDP on the same day as the Agreement. We consider and construe together instruments made in reference to and as part of the same transaction.[13] It is particularly clear that the Agreement and the EDDP must be construed together, because the agreements are related and are part of one transaction. The parties agreed that they are actually part of the *same agreement*: The first line of the EDDP states that it is "attached to and made a part of [the Agreement] dated [July 30, 2007,] between [Buck's] and [Anderson]."

The EDDP directly speaks to rebranding. Section 12 of the EDDP, titled "Independent Business," provides that "[n]othing herein shall obligate [Buck's] to sell or [Anderson] to purchase products, nor preclude [Anderson] from selling competitive-brand products . . . ." Buck's is forced to concede that section 12 pertains to rebranding, but it contends that the word "herein" limits the scope of that language. According to Buck's, "'herein'" must be understood as meaning "'in this'"[14] and thus section 12 of the EDDP should be understood as governing the EDDP alone. Buck's argues the EDDP merely concerns fuel delivery and does not alter terms within the Agreement which preclude Anderson from selling competitive-brand products. We are not persuaded.

The attempt by Buck's to limit the scope of section 12 via the word "herein" fails because the parties explicitly made the EDDP part of the Agreement. Accordingly, the word "herein" must refer to both the Agreement and the EDDP.

---

[13] *McCord & Burns Law Firm v. Piuze*, 276 Neb. 163, 752 N.W.2d 580 (2008).

[14] Brief for appellant at 14.

Because the Agreement and the EDDP together constitute one agreement, it is difficult to see what purpose section 12 of the EDDP would serve under the interpretation provided by Buck's.

Having concluded that section 12 of the EDDP applies to both the Agreement and the EDDP, this case becomes considerably easier to resolve. Section 12 makes clear that there is nothing in the Agreement (or EDDP) that precludes Anderson from rebranding. And while we have not forgotten the various arguments Buck's premised on sections 6, 19, 20, and 36 of the Agreement, those arguments lose all of their force in light of the clear language permitting Anderson to rebrand in section 12 of the EDDP.

The most Buck's could accomplish with its arguments based on the terms of the Agreement would be to show a conflict between the Agreement and the EDDP. But that would not be enough, because section 10 of the EDDP directly speaks to that possibility. It provides that to the extent there is any conflict between the terms of the Agreement and the terms of the EDDP, the EDDP's terms shall control. Accordingly, there is no way Buck's can show that there is contractual ambiguity as to whether Anderson may rebrand, let alone show that the parties' agreements unambiguously prohibit rebranding.

[14] Because the unambiguous terms of the parties' agreements permit rebranding, we find that the district court correctly denied the motion for summary judgment filed by Buck's. Because we find that the terms of the Agreement and the EDDP are unambiguous, we need not address the final assignment of error of Buck's that the court erred by not resolving contractual ambiguities through a trial. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[15]

---

[15] *Woodmen of the World v. Nebraska Dept. of Rev.*, 299 Neb. 43, 907 N.W.2d 1 (2018).

Anderson's Cross-Appeal

The issue in Anderson's cross-appeal is whether the Agreement affords Anderson a right of termination. We conclude, as a matter of law, that the terms of the Agreement are unambiguous and afford Anderson no right of termination. As a result, the court did not err when it denied that aspect of Anderson's motion for summary judgment.

Anderson acknowledges the Agreement grants Buck's the sole authority to terminate and is silent regarding any right of termination held by Anderson, and Anderson does not challenge the enforceability of a unilateral right to terminate a contract under Nebraska law. Anderson is concerned, however, that the Agreement is for an indefinite period and may no longer be "commercially reasonable,"[16] especially where the Agreement does not obligate Anderson to buy BP-branded fuel exclusively from Buck's. Anderson argues this court should fill the gap under Nebraska's Uniform Commercial Code, specifically Neb. U.C.C. § 2-309(2) and (3) (Reissue 2001), in order to grant Anderson both an uncontracted-for right of termination and to provide that such right of termination is effective upon reasonable notice. This we will not do.

Sections 19 and 20 of the Agreement contemplate that the power to terminate is held by only Buck's, and there are no similar provisions in the Agreement or the EDDP providing such a right to Anderson. Section 36 provides that even in a situation such as this case, where Anderson has elected to rebrand, Anderson would not have the power to terminate and the Agreement "shall remain in effect."

Section 2-309(2) of the Uniform Commercial Code states, "Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party." Buck's argues that § 2-309(2) does not apply, because the parties "otherwise agreed" that Buck's

---

[16] Brief for appellee on cross-appeal at 22.

has the sole power to terminate. The district court found that "[§] 2-309(2) . . . cannot be used to contradict the express provisions of the Agreement." We agree with Buck's and the district court, and we find Buck's has the sole right to terminate the Agreement. We therefore affirm the judgment of the district court.

## CONCLUSION

We determine the district court did not err when it determined that the Agreement and the EDDP do not prohibit Anderson from rebranding fuel sold at some of its stations and that Buck's holds the sole right to terminate the Agreement. For the reasons explained above, we affirm.

AFFIRMED.