IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

IN RE GUARDIANSHIP & CONSERVATORSHIP OF BROWN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE GUARDIANSHIP AND CONSERVATORSHIP OF JOHNNY R. BROWN,
AN INCAPACITATED PERSON.

TIMOTHY L. ASHFORD, APPELLANT,

V.

RENAULT BROWN AND MALACHI BROWN, APPELLEES.

Filed October 2, 2018.    No. A-17-1019.

Appeal from the County Court for Douglas County: MARCENA M. HENDRIX, Judge. Appeal dismissed.

Timothy L. Ashford, pro se.

No appearance for appellees.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Timothy L. Ashford appeals from the orders of the county court for Douglas County, which denied his application for attorney fees, motion for new trial and to alter or amend judgment, and motion for recusal. Because these orders are not final, appealable orders, we lack jurisdiction and must dismiss this appeal.

- 1 -

BACKGROUND

For several years, Ashford has been the attorney for Renault Brown and then for Malachi Brown, who have both served at times as guardian for their father Johnny R. Brown, an incapacitated person. In October 2014, Ashford and Renault executed a contract under which Renault retained Ashford to represent him "in and out of court" for "power of attorney or conservatorship or guardianship for my father" at the rate of $250 per hour. Renault was appointed as Johnny's guardian in December 2014.

At some point, the Nebraska Department of Health and Human Services (the Department) investigated a complaint against Renault made by Johnny while Renault was serving as Johnny's permanent guardian. The exact details of the complaint and investigation are not revealed by the record. However, in an August 7, 2015, letter from Ashford to another attorney inquiring whether that attorney wished to serve as Johnny's guardian, Ashford mentioned that Johnny had "filed a complaint against [Renault] for abuse of an elderly person." Also, at an August 31 hearing in this case on other matters, Ashford informed the county court that Johnny "reported [Renault] to [the Department] for abuse. They basically investigated and found the case had no merit to it. . . . [T]hey're in the process of dismissing." Also at that hearing, both Ashford and Renault informed the court that Renault wanted to withdraw as guardian due to time constraints and for various personal reasons. On October 19, the court entered an order granting Renault's request to withdraw as guardian. Subsequently, Malachi was appointed as Johnny's guardian, and he also signed a contract, dated February 25, 2016, retaining Ashford to represent him "in and out of court" for "power of attorney or conservatorship or guardianship for my father" at the rate of $250 per hour. The transcript on appeal contains "LETTERS OF SUCCESSOR GUARDIANSHIP FOR A WARD/INCAPACITATED PERSON," dated May 2, 2016, appointing Malachi as the successor guardian for Johnny. We note, however, that the current status of Malachi's appointment is unclear, given references in the record to an unsuccessful "attempt" to appoint Malachi as Ashford's guardian.

During the course of the guardianship proceedings, Ashford billed Renault and Malachi for his services, and they signed various authorizations of payment. The record on appeal contains multiple orders entered by the county court between December 16, 2014, and October 19, 2015, authorizing payments by Renault to Ashford out of Johnny's estate for legal fees totaling $8,641.57.

At a hearing on March 31, 2016, Ashford had a discussion with the county court which, although not completely clear from the record, appears to relate to various filings he was making in preparation for Malachi's approval as Johnny's permanent guardian and to the scheduling of a subsequent hearing for May 4. At the March 31 hearing, Ashford also informed the court that he was "going to file the motion for payment of my attorney fees and leave the order with [the court]." The record shows that Ashford did file a motion for payment of attorney fees on March 31, in which he alleged that he and his client Malachi had entered into a contract for legal services in this case and requested a payment of $2,543.26. The record on appeal does not contain a bill of exceptions for any hearing that might have occurred on May 4.

On May 5, 2016, Ashford filed another motion for payment of attorney fees, requesting a payment of $1,125 for services rendered to Malachi in this case.

On June 3, 2016, an evidentiary hearing was held before the county court. Both Renault and Malachi were present and testified at the hearing. At the start of the hearing, the court stated:

Alright. And this was reassigned and then, in reviewing some of the last filings, I discovered that it looked like proper notice hadn't been given, and also that not all the payments had been itemized and documented as required. And so, the Court noticed this in for the purpose of ensuring that that was done and that -- it appears that around $14,000 had been paid out in attorney fees in less than two years.

The county court then received exhibits offered by Ashford, including itemized invoices for services he provided to Renault and Malachi totaling $12,309.73, signed statements from Renault indicating he had no objection to the payment of attorney fees billed by Ashford in this case totaling $4,338.97, and a signed statement from Malachi indicating he had no objection to an attorney fee billing from Ashford in this case for $1,125. There was also an affidavit from Malachi, dated April 13, 2016, stating that he agreed to pay Ashford "a flat fee for his services in the amount of [$2,600] for his services until the date of May 4, 2016." The amount of $2,600 was handwritten in place of the original printed amount of $2,543.26, which had been struck out, and the change, which was initialed by Malachi, was explained in his testimony. Other exhibits received at the hearing included copies of the contracts for legal services between Ashford and Renault and Malachi, a "NOTICE OF MAILING INVOICES" from Ashford dated May 27, 2016, an affidavit from Ashford dated June 3, 2016, and copies of various motions for payment and orders to pay attorney fees filed in this case.

In the notice of mailing invoices exhibit, Ashford stated that the county court had ordered him to "file all of the invoices in this case." Although the notice states that invoices "for the services performed in this case" are "[e]nclosed," there are no invoices attached to this exhibit. As noted above, however, various invoices were received by the court at the June 3, 2016, hearing as separate exhibits. Ashford also stated in the notice that the invoices include legal services (1) to appoint Renault as an emergency temporary and then permanent guardian for Johnny, (2) for the defense of the investigation by the Department of a complaint against Renault while he was Johnny's permanent guardian, and (3) to appoint Malachi as successor and permanent guardian for Johnny. Finally, Ashford stated that he filed motions with the court stating the amount of the attorney fees, copies of which were mailed to each party, and that after each motion for payment, he obtained a signed authorization from "the Guardian."

In his affidavit, Ashford stated that he had reviewed "the attorney invoices," that the "attorney fees do not show all of the hours actually worked on the case because a number of hours were not on the bill," that the "attorney fees are reasonable as compared to the bills of other attorneys," and that the fees were billed at Ashford's "normal hourly rate" of $250. He also stated that he had "discussed the fee" with Renault and Malachi prior to receiving notice of the June 3, 2016, hearing, that Renault and Malachi had signed "an authorization authorizing the payment of the attorney fees," and that no one had filed an objection to the attorney fees.

After Renault was sworn in as a witness, the county court asked whether there was anything he wanted to tell the court, and Renault responded:

Yeah. My only question is, me not knowing -- and my brother not knowing -- this process, why did it raise a red flag to the Court that he was paid this much money? So, you know, that's why we're trying to -- that's why I'm here right now. Because, other than that, I have no problem with what I paid him because every time I paid him, the judge signed off, so then I pay. So, me not knowing this process, why did this raise a red flag to you and the Court?

The court then asked Renault whether he had any objection to the amount of fees that were paid, and the following discussion ensued:

[RENAULT]: I don't know. Should I? Do you see what I'm saying?

THE COURT: That's not something I can tell you.

[RENAULT]: I understand. That's why I'm --

THE COURT: Did you see each one of the itemized bills as they were submitted?

[RENAULT]: Well, you know, I always was in the office when the -- when I first hired him, I was in his office and he told me his hourly rate, so, okay. When he come here, he'd say, "I just get paid at court." So, okay. I'm learning the process. We come to court. He submits his bill for the work he's done, the paperwork. I know that he's done that work. We submit it to you. It's signed off. I go to the bank and get it. Do you see what I'm saying? So, no, I don't have an objection. That's -- I'm trying to figure out why are we here and he's on -- has to submit things to the Court, if there's not a red flag raised? And I want to know why is there the red flag?

THE COURT: Well, I guess that's what I have to decide.

[RENAULT]: Okay, I understand.

The court explained further, stating, "There's some missing documents here and, also, the case was reassigned." The court also stated, "And so, there's also a considerable amount of paperwork required that didn't used to be part of this [process]," and stated that "this has just happened in the last couple of years, where all kinds of notices have to go out and different forms need to be filled out." After the court's explanation, Renault informed the court that he did not have anything else to say about the attorney fees. However, he indicated that even though Malachi was Johnny's guardian, Renault was still acting as Johnny's conservator "until he's finished doing what he's doing." Renault then answered various questions from the court pertaining to the conservatorship. Ashford declined to question Renault further after the court's questioning.

Malachi was also sworn in as a witness, and during his testimony, he told the county court:

Yeah. I was just, kind of, piggybacking off of what Mr. Ashford was saying, that, as far as on the bill, I was a lot more vocal about it than Renault. Just coming in on the case, I just wanted to get -- I wanted to catch up on what was being charged, what was coming out of his account, things like that. I did question that -- or I did tell him, at that point in time, that, "The only thing that's coming out of my dad's account is attorney fees and I'm trying to figure out what's going on." He gave -- we itemized and got it going. We talked

- 4 -

about -- I signed the attorney fee agreement. And then, recently, when we had a meeting, I asked him what was the flat rate versus an hourly rate? He told me that he offered me -- I didn't remember, at that point in time, him ever offering a flat rate. I told him that. And he said he spoke on it. I told him that attorneys put things in writing and I never seen it in writing, because maybe I would have entertained it.

So I don't know -- being that I did sign the fee, I don't object to it, but I was -- I did ask if there was a different way. And he then said that, from this point on, that he would do things for us at no charge. I believe that's what he said.

In response to questioning from the court, Malachi confirmed that he had a fee agreement with Ashford in writing for $250 an hour to be paid out of Johnny's funds. The court asked whether he had any objection to the agreement, and Malachi responded, "Considering what his . . . flat rate was, that would be my only objection." The court inquired about the flat rate, and Malachi stated that he believed it was "in the range" of $2,500 to $3,500. Malachi also testified that he was provided with all of the itemized bills and that at the time of the hearing, he did not have any objection to the bills.

In response to questioning by Ashford after the court's questioning, Malachi agreed that although he initially "questioned [Ashford] on the fees" and that the interaction was somewhat "abrasive" from "both sides," they "eventually smoothed it out." Malachi also agreed that he, Renault, and Ashford spoke on "April 1st," that Ashford told them at that time that he would "do some things for no charge," and that the things for which Ashford had not charged were reflected on the bills Malachi reviewed. And, Malachi agreed that with one bill for somewhat over $2,500 he had "bumped it up to 2,600 round figure." Malachi reviewed itemized invoices dated April 8, 2016, and May 4, 2016, agreed that they reflected "some items" for which Ashford had not charged an attorney fee, and remembered signing authorizations for both of those invoices.

After Malachi's testimony, Renault made further inquiry of the county court, stating, "I . . . have a question. I still don't . . . understand what the Court needed, but it seemed like someone's under fire here and that's what I'm trying to get -- you see what I'm saying?" In response, the court explained, "Well, [Malachi], it's just the Court's job to make sure that all the documents that are supposed to be filed are filed, and everything that's supposed to take place is what's required under the new rules." The hearing then concluded with a brief discussion of matters unrelated to the issue of attorney fees.

On September 29, 2016, the county court entered an order, stating:

This matter came on for hearing on May 4, 2016 on the Motion for Payment of Attorney fees and on the court's request for a detailed accounting of services rendered for fees totaling $13,865.00 over a 19 month period.

[Ashford] appeared. [Renault] appeared. [Malachi] appeared.

Evidence was adduced and the court took the matter under advisement for review of documents.

Based on the evidence submitted, the court cannot conclude that the fees requested are fair and reasonable. It is therefore ordered that the motion is denied. It is further ordered that counsel reimburse the ward's estate $8,265 by October 31, 2016.

As noted above, although the record on appeal indicates that a hearing might have been scheduled for May 4, the record does not contain a bill of exceptions for a May 4 hearing (or a request for such a bill of exceptions). So, it is unclear whether the court was actually referring in its order to a hearing that occurred on May 4 or whether the court intended to refer to the June 3 hearing. It is also unclear whether the court's denial was of Ashford's March 31 motion, the May 5 motion, or some other motion for payment of attorney fees not found in the record on appeal.

Ashford filed a timely motion for a new trial and motion to alter or amend judgment. In his motion, Ashford alleged that his billed attorney fees were fair and reasonable, that the guardians and family members had not objected to the fees, and that there was no evidence in the record to support a reduction of the fees. He asked the court to alter or amend its order of September 29, 2016.

On October 24, 2016, Ashford filed a motion, seeking recusal of the county court judge.

On July 28, 2017, the county court heard both Ashford's motion for recusal and his motion for new trial and to alter or amend judgment. In connection with the recusal motion, the court received various exhibits offered by Ashford. At Ashford's request, these exhibits were received "under seal." In connection with the motion for new trial and to alter or amend judgment, Ashford offered "all testimony and exhibits from the previous [June 3, 2016,] hearing." The court indicated that it would receive the exhibits, and then it took the matter under advisement.

On August 30, 2017, the county court entered an order, overruling Ashford's motion for new trial and to alter or amend judgment and his motion for recusal. Ashford subsequently perfected his appeal to this court.

ASSIGNMENTS OF ERROR

Ashford sets forth 30 assignments of error, which we consolidate and restate as follows: The county court erred in (1) denying Ashford's application for attorney fees and ordering him to repay the estate $8,265, (2) denying his motion for new trial and to alter or amend judgment, and (3) denying his motion for recusal.

STANDARD OF REVIEW

When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decision made by the lower court. *E.D. v. Bellevue Pub. Sch. Dist.*, 299 Neb. 621, 909 N.W.2d 652 (2018).

ANALYSIS

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, and this is so even where neither party has raised the issue. *Cullinane v. Beverly Enters. - Neb.*, 300 Neb. 210, 912 N.W.2d 774 (2018). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *Id.*

Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), the three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the

action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. *Cullinane v. Beverly Enters. - Neb., supra*.

Ashford appealed from the county court's September 29, 2016, order denying his motions for attorney fees and from the August 30, 2017, order denying his motion for new trial and to alter or amend judgment, which concerned the attorney fee issue, and his motion for recusal. We must determine whether these are final, appealable orders before turning to the issues raised in his appeal. Following our review for jurisdiction pursuant to Neb. Ct. R. App. P. § 2-107(A)(2), we ordered Ashford to address in his brief the question of whether the orders appealed from were final, appealable orders, pointing out the caselaw we note below suggesting that the orders are not final and appealable. Ashford's brief on appeal does not address this question.

Although none of the motions requesting fees found in the record on appeal specify which statutory provisions Ashford was relying upon in making those requests, the various requests for fees and the orders granting such fees in this case would have been made pursuant to either Neb. Rev. Stat. § 30-2620.01 (Reissue 2016) (allowing attorney fees in guardianship proceedings) or possibly pursuant to Neb. Rev. Stat. § 30-2643 (Reissue 2016) (allowing fees in conservatorship proceedings), given Renault's testimony that he was still acting as Johnny's conservator. Regardless, both statutory provisions are contained within the Nebraska Probate Code. Proceedings under the Nebraska Probate Code are special proceedings within the meaning of § 25-1902. *In re Guardianship & Conservatorship of Forster*, 22 Neb. App. 478, 856 N.W.2d 134 (2014). Thus, the September 29, 2016, order was made in a special proceeding. Accordingly, the next question is whether that order, which denied Ashford's request for attorney fees and reduced the amount of fees previously awarded, affected a substantial right.

A substantial right is an essential legal right, not a mere technical right. *In re Estate of Abbott-Ochsner*, 299 Neb. 596, 910 N.W.2d 504 (2018). An order affects a substantial right if it affects the subject matter of the litigation by diminishing a claim or defense that was available to the appellant prior to the order from which he or she is appealing. *Id.* It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial. *Id.* A substantial right under § 25-1902 is not affected when that right can be effectively vindicated in an appeal from the final judgment. *In re Estate of Abbott-Ochsner, supra*. Substantial rights under § 25-1902 include those legal rights that a party is entitled to enforce or defend. *In re Estate of Gsantner*, 288 Neb. 222, 846 N.W.2d 646 (2014).

If a substantial right is affected, an order is directly appealable as a final order even though it does not terminate the action or constitute a final disposition of the case. *In re Guardianship & Conservatorship of Forster, supra*. Awards of fees for services pursuant to §§ 30-2620.01 and 30-3643 that do not finally determine a guardian and conservator's claim for compensation are not final and appealable until the guardian and conservator is discharged from his or her duties. *In re Guardianship & Conservatorship of Forster, supra*.

In *In re Guardianship & Conservatorship of Forster, supra*, this court considered whether several orders approving fees for a series of successor guardians/conservators were final and appealable. In that case, a series of temporary guardians and conservators were appointed, but the ward died without a permanent guardian/conservator ever being appointed. The temporary

guardian/conservator in place at the time of the ward's death filed a final inventory and accounting and a petition for the approval of the same, termination of the guardianship/conservatorship, discharge of the guardian/conservator, and a request for fees. An appeal was taken from the county court's order approving the final inventory and accounting. This court determined that the previous orders awarding fees to the three prior temporary guardians/conservators were final determinations and not subject to later revision since their services were complete at the time the orders were entered, making the orders appealable at the time they were entered. However, with regard to the last temporary guardian/conservator, we found that the two orders awarding fees to him prior to the ward's death were not final at the time they were entered because his services were still ongoing at that time. We held that those fee awards did not become final and appealable until the county court entered its final order terminating the guardianship and conservatorship and discharging the temporary guardian/conservator from his duties. Because the appeal was taken from that final order, we found that we had jurisdiction to review the orders awarding fees to the last temporary guardian/conservator.

In *In re Estate of Gsantner, supra*, the Nebraska Supreme Court addressed whether an order awarding fees to a personal representative was final and appealable. In that case, the county court entered two different orders awarding fees to the personal representative. First, the court entered an order awarding a "partial fee" of $17,500. *Id.* at 224, 846 N.W.2d at 650. Second, the court entered an order awarding the personal representative $25,000 as compensation for the 400 hours he expended on behalf of the estate. On appeal, the Supreme Court concluded that the second order was appealable because it was a final determination of the amount of compensation to which the personal representative was entitled. The Supreme Court observed that while the first order specifically stated it was awarding a partial fee, indicating that it was subject to later revision or augmentation, the second order did not include any language indicating it was subject to later revision or augmentation. The Supreme Court also observed that the application for fees that led to the second order was based on a request for a percentage of the estate, as opposed to hourly compensation which would change if further work was completed. Finally, the Supreme Court noted that the award was made after the county court conducted a special evidentiary hearing on the issue of fees. By setting the amount of compensation at $25,000, the order disposed of the personal representative's claim for reasonable compensation, awarding the only fee the personal representative would receive. The Supreme Court concluded that since the order was dispositive of the personal representative's claim, it affected a substantial right.

In the present case, it is not clear from the record whether Ashford's services are still ongoing. As far as we can tell from the record, Johnny is still alive and the guardianship/ conservatorship apparently remains active. There is some suggestion that, despite the letters of successor guardianship found in the record, the county court did not end up appointing Malachi as Johnny's guardian. Thus, it is unclear whether Ashford's services to Johnny's guardian, Malachi, are complete. The status of services being provided to Renault by Ashford is also unclear. Certainly any services Ashford rendered to Renault, while Renault was acting as Johnny's guardian, have ended since Renault was allowed to withdraw as Johnny's permanent guardian in October 2015. But Renault was apparently appointed as Johnny's conservator at some point after his withdrawal

as guardian and before the June 3, 2016, hearing, where he testified that he "still [was] conservator."

The September 29, 2016, order in this case did not award fees to Ashford; rather, it found, following a request by the county court for "a detailed accounting" and an evidentiary hearing, that the fees (those requested by Ashford as well as prior fees charged and awarded) were not fair and reasonable. The order further required Ashford to reimburse the estate for a portion of the fees previously awarded.

Although the order appealed from in this case differs somewhat from those discussed in *In re Guardianship & Conservatorship of Forster* and *In re Estate of Gsantner* above, we conclude that the order was not a final, appealable order because there is no indication in the record that Ashford's services are complete. And, there is no indication that the duties of any guardian or conservator for which Ashford is providing legal services has been discharged.

We are likewise without jurisdiction to consider Ashford's appeal from the portion of the August 30, 2017, order that denied his motion for recusal of the county court judge. That portion of the order was not a final order, and Ashford does not contend otherwise. Recusal questions are fully reviewable on an appeal from a final judgment, and therefore, the collateral order exception is unavailable. *State of Florida v. Countrywide Truck Ins. Agency*, 270 Neb. 454, 703 N.W.2d 905 (2005). Cf. *State v. Sklenar*, 269 Neb. 98, 690 N.W.2d 631 (2005) (concluding that denial of motions to discharge violation of probation and to recuse judge did not present final, appealable order). See, also, *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017) (appellate jurisdiction not authorized in absence of judgment or final order without specific statutory authorization). Accordingly, we do not address Ashford's third assignment of error concerning the court's denial of his motion for recusal.

Given our conclusion with respect to jurisdiction, we need not address Ashford's remaining assignments of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Ray Anderson, Inc. v. Buck's, Inc.*, 300 Neb. 434, 915 N.W.2d 36 (2018).

CONCLUSION

Because we conclude that we do not have jurisdiction to address the orders regarding Ashford's fees and his request for recusal, we dismiss this appeal.

APPEAL DISMISSED.