HELEN M. AHRENS AND ELDEN AHRENS,
WIFE AND HUSBAND, APPELLEES, V.
STEVEN K. DYE ET AL., APPELLANTS,
IMPLEADED WITH KARL R. DYE ET AL., APPELLEES.

302 N.W.2d 682

Filed February 27, 1981. No. 42798.

Roy I. Anderson and Gregory P. Drew for appellants.

David B. Latenser for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

On June 10, 1980, this court released its opinion in the above-entitled matter, reported at 206 Neb. 423, 293 N.W.2d 388. That opinion was decided by a division of this court. Thereafter, a motion for rehearing was filed and we granted leave to reargue to the entire court. We have now concluded that the judgment of the trial court was correct, and we therefore withdraw our previous opinion and in place thereof file this opinion affirming the judgment of the trial court.

Though the facts of the action are set out in our earlier opinion, for ease of understanding we will repeat them herein. The property in question was originally owned by John A. Dye, who died testate on June 9, 1974. By the terms of his will, the property

descended as follows: a one-third interest to Helen M. Ahrens; a one-third interest to Karl R. Dye; a one-sixth interest to Steven K. Dye; and a one-sixth interest to David A. Dye. Following the death of John A. Dye, David A. Dye and Steven K. Dye and Steven's spouse, Deborah Dye, conveyed their interest in the real estate to Joan E. Siemonsma (Mrs. Siemonsma) and Steven K. Dye (Steven), mother and son, as joint tenants.

The land was leased by the owners to the husband of one of the joint owners, Elden Ahrens, on November 25, 1974. The agreement named Karl R. Dye, Helen M. Ahrens, David A. Dye, and Steven K. Dye as landlords and Elden Ahrens (Elden) as tenant. On August 29, 1977, Mrs. Siemonsma and Steven served a notice to quit on Elden and Helen Ahrens. Notwithstanding the notice to quit served by Mrs. Siemonsma and Steven on Elden, he nevertheless proceeded to plant a crop pursuant to the lease remaining in effect with the other co-owners.

Thereafter, an action in partition was filed; and on June 6, 1978, a decree was entered by the trial court ordering the land to be sold in partition. That decree specifically found that the notice to quit served by Mrs. Siemonsma and Steven on Elden terminated the landlord interest of Mrs. Siemonsma and Steven but did not terminate the landlord-tenant relationship of Helen Ahrens and Karl Dye to Elden.

Subsequently, the land was sold by the referee at a partition sale. Both the land and the growing crops were sold together and the purchaser was advised that it would acquire both the landlords' and tenant's interests in the land being sold.

In November of 1978 the owners of the property, other than Mrs. Siemonsma and Steven, filed an application for payment by the referee to Elden as tenant for the reasonable value of his services rendered as tenant in the production of crops which had been sold with the land. Mrs. Siemonsma and Steven

objected to the application and urged that their distributive shares of the proceeds be taken free and clear of any claim for compensation by the tenant for services or expenditures. They based their claim on the fact that they had terminated their relationship with the tenant.

On November 13, 1978, the court entered an order finding the value of the growing crops on the premises to have had a value at the time of the sale in the amount of $34,437.50. At the same time, however, the trial court found that Mrs. Siemonsma and Steven's objections should be sustained and ordered their shares to be received without any deduction for the costs of growing the crops. The referee was ordered to pay Elden as tenant the sum of $13,775, to be deducted from the distributive shares of Helen Ahrens and Karl Dye. This was apparently computed on the basis that the farm lease entitled Elden to 60 percent of the value of the crops. The trial court, however, found that Elden should only receive 60 percent of two-thirds of the value of the crops and that only two-thirds of the co-op bill should be paid from the proceeds of the sale, thereby imposing upon the tenant the cost of all the remaining costs without any corresponding right to the value of the crops. Likewise, Mrs. Siemonsma and Steven received an amount equal to one-third the value of the growing crops without paying for any of the costs of growing those crops.

Subsequently, appellees filed a motion for new trial. On January 2, 1979, the District Court sustained the motion for new trial and entered an amended judgment ordering the referee to pay to Elden for his services as tenant the sum of $20,662.50, to be deducted from the distributive shares of all of the former owners, including Mrs. Siemonsma and Steven. The trial court apparently concluded that Mrs. Siemonsma and Steven should not receive all of the benefits without incurring any expenses. The trial court thereafter overruled a motion for new trial. It was from that order which the appellants now appeal.

As noted in our earlier opinion, appellants raise several assignments of error. The principal issues concern Elden's relationship to the appellants and whether that relationship or some other doctrine entitles him to reimbursement from their distributive shares for his services and expenses.

It is true, generally speaking, that tenants in common can deal with third parties just as fully as owners of property held individually, including the right to terminate a lease as to the cotenant's interest. In 86 C.J.S. *Tenancy in Common* § 113(c) at 519-20 (1954) it is noted: "[O]ne tenant in common may terminate a lease as to his own interest without the concurrence of the other cotenants." The other side of that, however, as noted in the same work, is that: "A nonleasing tenant in common who does not himself wish to cultivate the property may not prevent his cotenant's lessee from doing so. . . ." § 113(e) at 521. While no cases in Nebraska may be found exactly on point, cases from other jurisdictions supporting the general rule that one cotenant may terminate a lease as to his own undivided interest in the property include *Cook v. Boehl*, 188 Md. 581, 53 A.2d 555 (1947); *Matteo v. Ginger Estates, Inc.*, 94 Misc. 2d 302, 404 N.Y.S.2d 533 (1978). See, also, 20 Am. Jur. 2d *Cotenancy and Joint Ownership* § 100 (1965). After the notice to quit was served on Elden, the court correctly concluded that Elden's tenancy as to those appellants' shares of the land was terminated. The notice to quit did not, however, operate to terminate the interest of landlord and tenant between Helen and Karl on the one hand, and Elden on the other.

Had the evidence disclosed that the land was sold subject to the tenant's rights in the crops, or at least not included in the sale as they were, perhaps the contentions of appellants would be correct. However, the evidence is uncontradicted that the land was sold with the tenant's rights. The evidence clearly establishes that the value of the crops at the time of the

sale was in the amount of $34,437.50. Presumably, whoever purchased the land paid an additional $34,437.50 by reason of the value of the crops and would not have paid that additional sum had the crops not been there. Mrs. Siemonsma and Steven therefore gained their proportionate shares of the $34,437.50 by reason of the unharvested crops being on the land and accepted the benefits resulting from the tenant's efforts. We believe, therefore, that the principle of unjust enrichment applies in a case of this nature, as apparently the trial court concluded. In 66 Am. Jur. 2d *Restitution and Implied Contracts* § 3 at 945 (1973), the author notes that unjust enrichment is "a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated where it is just and equitable that such restitution be made . . . . A person is enriched if he has received a benefit, and he is unjustly enriched if the retention of the benefit would be unjust. Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another."

In *Bush v. Kramer*, 185 Neb. 1, 3, 173 N.W.2d 367, 369 (1969), we said: "Where benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving the benefits to avoid payment therefor, the law requires the party receiving and retaining the benefits to pay the reasonable value of them." See, also, Restatement of Restitution § 125 (1937).

In this case, Mrs. Siemonsma and Steven received one-third of the value of the growing crops as part of their distributive shares. They received that sum as a result of Elden's efforts in growing them and his incurring of expenses in connection with the crops. Should we permit them to keep it free of any charge, we, in effect, would be requiring Elden to have la-

bored for the benefit of Mrs. Siemonsma and Steven without any compensation and, in addition, be requiring Elden to absorb all the expenses of growing those crops. We believe that does, indeed, fall within the equitable doctrine of unjust enrichment and should not be permitted. The trial court correctly concluded that such was the case. We believe the judgment of the trial court was correct. The judgment is therefore affirmed.

AFFIRMED.

BOSLAUGH, J., dissenting in part.

I concur in the judgment of the court but dissent from that part of the opinion which holds that a tenant in common may terminate a lease as to his interest without the concurrence of the other tenants in common. I believe the rule is unsound and will lead to confusion and uncertainty in an area of the law where certainty is of utmost importance.

Although some authority may be found to support the rule stated in the majority opinion, *Cook v. Boehl*, 188 Md. 581, 53 A.2d 555 (1947), and *Matteo v. Ginger Estates, Inc.*, 94 Misc. 2d 302, 404 N.Y.S.2d 533 (1978), cited in the majority opinion, do not support the position taken. In the *Cook* case, the lessee's interest in the property was not affected by the notice of termination by one cotenant and the interests of the cotenants were determined after the partition of the property. The *Matteo* case involved the right of one tenant in common to maintain a holdover action without joining the other tenant in common. This is a well-established rule relating to joinder in such cases, but has no application in this case.

I believe the correct rule is expressed in the following statement in *Fredeking v. Grimmett*, 140 W. Va. 745, 762-63, 86 S.E.2d 554, 564 (1955), relating to termination of a lease by forfeiture: "A forfeiture provision in a contract of lease upon real estate owned jointly by tenants in common is indivisible and such lease can not

be forfeited by less than all the owners of the undivided interests for the reason that if the lease could be forfeited by less than all the owners of the undivided interests the lessee would be bound by the lease as to some of such owners and discharged as to other such owners. *Eurengy v. Equitable Realty Corporation*, 341 Mo. 341, 107 S.W.2d 68.

"In *Howard v. Manning*, 79 Okla. 165, 192 P. 358, 12 A.L.R. 819, the Court used this pertinent language:

"'If the right to enforce a forfeiture accrues and a part of the tenants in common are allowed to elect to enforce the forfeiture, then the lessee is placed in the inequitable position of being bound by the lease as to part of the tenants and discharged by a part, which means that the lessee is still liable as a lessee to some of the tenants in common, although he cannot enjoy any of the benefits of his lease without becoming a trespasser and liable for damages to the other owners of the land. A fair conception of honesty and fair dealing negatives a construction of the lease imputing to the lessor and lessee an understanding or intention that the lessee's covenants of the character involved in this case are subject to apportionment by the death of the lessor leaving more than one heir. If the death of the lessor operates to apportion the benefits of the covenant among his heirs, then there can be a partial forfeiture, leaving the lessee bound to part of the heirs but denied all practical benefits under the lease. This would create a sort of tenancy which, we believe, it would be unreasonable to hold that the lessor and lessee intended or contemplated.

"'Under the American authorities the lessee's covenants, unless expressed otherwise, are joint and indivisible under a lease executed jointly by all the tenants in common. The heirs of a deceased lessor are in no higher position with respect to the covenants in the lease than they would be if they jointly executed the same lease, although the lease may expressly reserve to each his proportionate interest in the rents.'"

See, also, 51C C.J.S. *Landlord & Tenant* § 103 (1968).

McCown, J., joins in this dissent.