Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/14/2020 08:08 AM CDT

Brenda L. Benjamin, Personal Representative of the
Estate of Mark W. Benjamin, deceased, appellant
and cross-appellee, v. Douglas S. Bierman and
Sixth Street Rentals, L.L.C., appellees
and cross-appellants.

Brenda L. Benjamin, Personal Representative of the
Estate of Mark W. Benjamin, deceased, appellant
and cross-appellee, v. Douglas S. Bierman et al.,
appellees and cross-appellants.

___ N.W.2d ___

Filed May 22, 2020.    Nos. S-19-328, S-19-329.

1. **Trial: Witnesses: Evidence: Appeal and Error.** In a bench trial of an
   action at law, the trial court is the sole judge of the credibility of the
   witnesses and the weight to be given their testimony; an appellate court
   will not reevaluate the credibility of witnesses or reweigh testimony but
   will review the evidence for clear error.
2. **Trial: Equity: Appeal and Error.** On appeal from the bench trial of an
   equity action, the standard of review is de novo on the record and the
   court must resolve questions of law and fact independently of the trial
   court's determinations.
3. **Equity: Appeal and Error.** When the evidence is in conflict, the
   appellate court considers and may give weight to the fact that the trial
   court observed the witnesses and accepted one version of the facts
   over another.
4. **Contracts.** The interpretation of a contract and whether the contract is
   ambiguous are questions of law subject to independent review.
5. ____. A contract written in clear and unambiguous language is not sub-
   ject to interpretation or construction and must be enforced according to
   its terms.
6. ____. The court must accord clear terms their plain and ordinary mean-
   ing as an ordinary or reasonable person would understand them.

7. ____. The fact that the parties have suggested opposite meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.

8. ____. A court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include.

9. ____. Extrinsic evidence is not permitted to explain the terms of a contract that is unambiguous.

10. **Witnesses: Testimony.** The credibility of a witness is a question for the trier of fact, and it is within its province to credit the whole of the witness' testimony, or any part of it, which seemed to it to be convincing, and reject so much of it as in its judgment is not entitled to credit.

11. **Trial: Expert Witnesses.** A trier of fact is not bound to accept expert opinion testimony.

12. **Expert Witnesses.** The determination of the weight that should be given expert testimony is uniquely the province of the fact finder.

Appeals from the District Court for Buffalo County: John H. Marsh, Judge. Affirmed.

Bradley D. Holbrook and Nicholas R. Norton, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellants.

William J. Lindsay, Jr., and John A. Svoboda, of Gross & Welch, P.C., L.L.O., Kenneth F. George, of Ken George Law Office, and Luke M. Simpson, of Bruner, Frank & Schumacher, L.L.C., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

## I. INTRODUCTION

Brenda L. Benjamin, personal representative of the estate of Mark W. Benjamin, filed separate complaints against Douglas S. Bierman (Doug) and Sixth Street Rentals, L.L.C. (Rentals), and against Doug, Eugene J. Bierman, and Sixth Street Development, L.L.C. (Development) (collectively appellees). In her complaints, Brenda generally sought an accounting, to dissolve both Rentals and Development, and damages. The district court found that appellees breached the operating

agreements of Rentals and Development, ordered an accounting for each, declined to dissolve either, and awarded Brenda damages of $22,200 with respect to Rentals and $473,233 with respect to Development. We affirm.

## II. BACKGROUND

This is a companion case to *Bierman v. Benjamin*.[1] Mark passed away on April 14, 2015, leaving his wife, Brenda, as his primary beneficiary and the personal representative of his estate. In addition to Mark's share of BD Construction, Inc./Kearney (BD), Mark owned a one-half share of Rentals (case No. S-19-328) with Doug and a one-third interest in Development along with Doug and Eugene (case No. S-19-329).

Development is in the business of renting storage units. Pursuant to an oral lease, Development also rents, for $8,000 per month, the office building and shop utilized by BD, and it owns another building near the BD building and shop, as well as some vacant lots held for sale. Rentals owns trailers used for construction offices and storage, and a utility vehicle, all of which are rented to BD for approximately $4,000 per month.

Mark was acting as manager for both Rentals and Development at the time of his death. After Mark's death, Doug took over the manager position for both and continues to serve in that capacity. The record shows no formal action was taken to appoint Doug as manager of Development; rather, Doug called Eugene (his father) to inform him that Doug was going to elect himself as manager. At a later date, Doug issued a formal notice and minutes reflecting that change. In the same way, Doug named himself manager of Rentals and communicated that change to Brenda. Brenda testified that with respect to Development, Doug informed her that he and Eugene were prepared to outvote her on anything she might

---

[1] *Bierman v. Benjamin, ante* p. 860, ___ N.W.2d ___ (2020).

want to do. As for Rentals, Brenda was less concerned with Doug's naming himself manager, because all of Rentals' assets were in the control of, and maintained by, BD.

Counsel for Rentals and Development sent notices to Brenda, pursuant to the respective separate but identical operating agreements, stating that Rentals and Development wished to buy out Mark's shares.

Brenda testified she and Doug had generally reached an agreement that Doug would buy out Mark's interest in Rentals and that Doug and Eugene would buy out Mark's interest in Development. Brenda would then receive Development's interest in a storage facility jointly owned by Development, Mark's estate, and a third entity, as an offset against the purchase price for Mark's interest in Development.

In November 2015, Brenda and Doug agreed to have both Rentals and Development valued. As relevant to this appeal, the business appraisals were completed by Terry Galloway. Galloway testified that Brenda and Doug agreed that December 31, 2014, was a more reasonable cutoff as the valuation date, rather than Mark's date of death just 4 months later. Ultimately, Galloway valued Rentals at $144,400, with Mark's one-half interest valued at $72,200, and valued Development at $5,641,700, with Mark's one-third interest valued at $1,880,900. The value of Development included $1.75 million in life insurance proceeds on Mark's life. These valuations were completed in March 2016.

Brenda testified that by the end of March 2016, she became aware there was going to be a problem closing on all three entities (BD, Rentals, and Development) at the same time. Closing was set for April 15, 2016, but it never occurred. Brenda testified that Doug refused to close and that he informed her the negotiations into BD needed to be rethought in light of the values assigned to Rentals and Development. Doug testified that he was unsure whether he wanted to own Rentals if he did not also own BD and that he did not have the money to buy Rentals at the time he sent notice of his election to do so.

Doug never offered to close on Rentals. As for Development, Doug wanted a determination as to whether the life insurance proceeds were included in BD before he closed on Development.

Following the failure to close on Rentals and Development, Brenda filed lawsuits on June 1, 2016, seeking various forms of relief as to both entities. Following a bench trial, the district court found that appellees breached the operating agreements of Rentals and Development, ordered an accounting for each, declined to dissolve either, and awarded Brenda damages of $22,200 with respect to Rentals and $473,233 with respect to Development. These appeals followed.

## III. ASSIGNMENTS OF ERROR

On appeal, Brenda assigns that the district court erred in not ordering both Rentals and Development dissolved.

On cross-appeal, appellees assign, restated, that the district court erred in (1) finding that the operating agreements set forth an unambiguous method for determining fair market value; (2) finding that Galloway's appraisal was fair market value for purposes of the operating agreements; (3) finding that Galloway was an independent appraiser; (4) finding that the proper date of valuation was December 31, 2014, and not April 14, 2015; (5) finding that Galloway's valuation was substantially complete as of November 30, 2015, for purposes of determining when the 120-day period in which appellees were obligated to purchase Mark's interest; (6) finding that fair market value was established by Galloway's opinion of value as of November 30, 2015; (7) entering judgment without determining the correct fair market value of Mark's interest; (8) finding that appellees refused to complete the purchase of Mark's interest, because no agreement had been reached on BD; (9) finding that appellees rejected Galloway's valuation only when the parties did not agree on the value of the BD stock; (10) finding that appellees failed to negotiate in good faith and breached the contract to purchase Mark's interest from Brenda under the

operating agreements and that such was a substantial failure of the exchange; (11) denying Development's counterclaim for specific performance; (12) not using the value determined by their appraiser; (13) finding the starting date for accrual of interest to be March 30, 2016; and (14) awarding $22,200 and $437,233, respectively, plus interest, to Brenda.

## IV. STANDARD OF REVIEW

[1] In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony;[2] an appellate court will not reevaluate the credibility of witnesses or reweigh testimony but will review the evidence for clear error.[3]

[2,3] On appeal from the bench trial of an equity action, the standard of review is de novo on the record and the court must resolve questions of law and fact independently of the trial court's determinations.[4] When the evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.[5]

[4] The interpretation of a contract and whether the contract is ambiguous are questions of law subject to independent review.[6]

## V. ANALYSIS

### 1. Brenda's Appeal

On appeal, Brenda argues that the district court erred in not ordering Rentals and Development to be dissolved under

---

[2] *U.S. Pipeline v. Northern Natural Gas Co.*, 303 Neb. 444, 930 N.W.2d 460 (2019).

[3] *Id.*

[4] See *Robertson v. Jacobs Cattle Co.*, 285 Neb. 859, 830 N.W.2d 191 (2013).

[5] See *O'Connor v. Kearny Junction,* 295 Neb. 981, 893 N.W.2d 684 (2017).

[6] *DH-1, LLC v. City of Falls City, ante* p. 23, 938 N.W.2d 319 (2020).

the authority of Neb. Rev. Stat. § 21-147(a)(4)(B) or (a)(5)(B) (Reissue 2012), which subsections provide:

> A limited liability company is dissolved, and its activities must be wound up, upon the occurrence of any of the following:
>
> . . . .
>
> (4) on application by a member, the entry by the district court of an order dissolving the company on the grounds that:
>
> . . . .
>
> (B) it is not reasonably practicable to carry on the company's activities in conformity with the certificate of organization and the operating agreement; or
>
> (5) on application by a member, the entry by the district court of an order dissolving the company on the grounds that the managers or those members in control of the company:
>
> . . . .
>
> (B) have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant.

As an initial matter, appellees argue that Brenda lacks standing to request dissolution. We agree.

Both Rentals and Development are limited liability corporations, governed by the Nebraska Uniform Limited Liability Company Act. Under that act, a member is defined as "a person that has become a member of a limited liability company under section 21-130 and has not dissociated under section 21-145."[7] Neb. Rev. Stat. § 21-145 (Reissue 2012) provides that a person is "dissociated as a member from a limited liability company" upon the death of that person. Thus, upon Mark's death, he was dissociated and was no longer a member per the definition of the term under the act.

---

[7] Neb. Rev. Stat. § 21-102 (Reissue 2012).

Dissociated members' "right to participate as a member in the management and conduct of the company's activities terminates,"[8] and thereafter, a dissociated member has limited rights. In the instance presented here, the death of a member, "the deceased member's personal representative or other legal representative may exercise the rights of a transferee provided in subsection (c) of section 21-141 and, for the purposes of settling the estate, the rights of a current member under section 21-139."[9] These rights are limited and primarily consist of the right to have access to records or other information concerning the company's activities.

Brenda has alleged that dissolution is proper under § 21-147(a)(4)(B) and (a)(5)(B). Both of those subsections require an application to be made by a member, but Mark ceased to be a member upon his death. By virtue of this dissociation, Brenda is also not a member. As such, she cannot seek dissolution under the plain language of the act.

Nor are we persuaded by Brenda's contention that article IX, section 2, of the operating agreement granted Mark the power to transfer governance power, along with his economic interest, in Rentals and Development. That section provides:

> Any Member may transfer by gift or bequest all or any portion of his or her interest in the Company to a spouse or child of the transferring Member, or to a trust established for the benefit of such spouse or child, or to an existing Member of the Company upon written notice to the Company, of such gift or bequest.

We read the plain language of this section of the agreements as permitting the transfer of some or all of a member's or dissociated member's interest in a limited liability company by gift or bequest. Indeed, under Neb. Rev. Stat. §§ 21-140 and 21-141 (Reissue 2012) of the act, an interest in a limited liability company is personal property that is transferable.

---

[8] Neb. Rev. Stat. § 21-146(1) (Reissue 2012).

[9] Neb. Rev. Stat. § 21-143 (Reissue 2012).

But any interest that is transferred is accompanied by limited rights, as discussed above.[10] We do not read the language of the operating agreements as broadening the rights accompanying the interest to include governance power or, indeed, any other power beyond that permitted by the act.

We agree with appellees that Brenda lacks standing to seek dissolution, and therefore, we find no merit to her assignment of error on appeal.

## 2. Appellees' Cross-Appeal

On cross-appeal, appellees assign 17 separate assignments of error. Generally, appellees take issue with the fair market value of Rentals and Development, and they assign error to the district court's interpretation of the operating agreements regarding the calculation of the value, as well as the district court's adoption of one expert's value over another expert's value. Appellees also argue that the court should have ordered specific performance of the contract for the purchase of Mark's shares and that the court erred in finding a breach of that contract and awarding Brenda damages for the breach.

### (a) Assignments of Error Related to Fair Market Value

Appellees' primary arguments on appeal center on the fair market value of Rentals and Development. Appellees first assign that the district court erred in finding that the operating agreements set forth an unambiguous method for determining the fair market value of Rentals and Development. In contrast, Brenda argues that the operating agreements did set forth how fair market value was to be determined—either the parties were to agree to it or, in the absence of agreement, the parties were to appoint an independent, third-party appraiser to calculate that value.

---

[10] See, § 21-141; Neb. Rev. Stat. § 21-143 (Reissue 2012).

[5-9] A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.[11] The court must accord clear terms their plain and ordinary meaning as an ordinary or reasonable person would understand them.[12] The fact that the parties have suggested opposite meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.[13] A court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include.[14] Extrinsic evidence is not permitted to explain the terms of a contract that is unambiguous.[15]

The agreements provide in relevant part:

In the event that a Member dies . . . , the Company may at its option repurchase the deceased . . . Member's interest in the Company for an amount equal to the fair market value of such interest on the Member's date of death . . . . The fair market value of the Member's interest shall be as agreed in good faith by the Company and the personal representative(s) of the deceased Member's estate . . . ; provided that if no such agreement has been reached within ninety (90) days of the date of death . . . , then the fair market value shall be determined by an independent and duly qualified appraiser mutually agreeable to the Company and the estate of the deceased Member . . . which shall equally bear equally [sic] the cost of such appraisal. The fair market value of the deceased Member's interest . . . shall be payable by the Company to the deceased Member's estate . . . within one hundred

[11] *DH-1, LLC v. City of Falls City, supra* note 6.

[12] *Ray Anderson, Inc. v. Buck's Inc.*, 300 Neb. 434, 915 N.W.2d 36 (2018).

[13] *Id.*

[14] *Id.*

[15] *Id.*

twenty (120) days of the establishment of such fair market value on the same payment terms as set forth in Section 9.4 of this Agreement.

We disagree with appellees' assertion that "fair market value" is a term of art necessitating reliance on factors outside of the agreements, and instead agree with Brenda's reading of the language of the operating agreements. The plain language of the agreements clearly states that "the fair market value shall be determined by an independent and duly qualified appraiser mutually agreeable to the Company and the estate of the deceased Member." We need not rely on anything further to interpret the agreements' definition of "fair market value." We reject this assignment of error.

Appellees next assign that the district court erred in finding that Galloway's appraisal was the fair market value of Rentals and Development for purposes of the operating agreements, that he was independent at the time of his appraisal, that the appraisal should be dated as of the end of the calendar year preceding Mark's death, and that the appraisal was substantially completed as of November 30, 2015.

[10-12] The credibility of a witness is a question for the trier of fact, and it is within its province to credit the whole of the witness' testimony, or any part of it, which seemed to it to be convincing, and reject so much of it as in its judgment is not entitled to credit.[16] A trier of fact is not bound to accept expert opinion testimony.[17] The determination of the weight that should be given expert testimony is uniquely the province of the fact finder.[18] An appellate court will not reevaluate the credibility of witnesses or reweigh testimony but will review the evidence for clear error.[19]

---

[16] *Fredericks Peebles v. Assam*, 300 Neb. 670, 915 N.W.2d 770 (2018).

[17] *Id.*

[18] *Id.*

[19] *O'Connor v. Kearny Junction, supra* note 5.

The district court did not err in making these challenged findings. First, the record shows that the parties agreed Galloway should conduct the appraisal pursuant to the operating agreements. The record also supports the district court's finding that the parties were in agreement that the appraisal should be done as of December 31, 2014.

In addition, evidence at trial showed that the appraisal was originally received by the parties on November 30, 2015, but that discussions were ongoing as to various issues related to the appraisal. There is evidence that certain revisions to the appraisal were made between November 30, 2015, and the end of March 2016. The record supports the district court's finding that the appraisal was substantially complete by November 30 and that November 30 was appropriate from which to calculate the 120-day period from which appellees had to comply with the terms of the operating agreements for buying out Mark's interest.

The record is undisputed that Galloway eventually represented Brenda's interests in various negotiations regarding Rentals, Development, and BD. The record also shows that at the time of the appraisal, Galloway was not representing Brenda, and as such, there was evidence to support the court's finding that Galloway was independent.

We review the factual findings of the district court for clear error. We find no such error in the district court's finding that Galloway's valuation was the fair market value for purposes of the operating agreements and in entering judgment accordingly. Appellees' assignments of error regarding fair market value are without merit.

### (b) Assignments of Error Related to Breach of Contract and Specific Performance

Appellees next assign that the district court erred in finding that they failed to negotiate in good faith when they rejected Galloway's valuation and refused to close on the Rentals and

Development sales only after the parties failed to reach an agreement on BD. Appellees further argue that the court erred in finding that they breached the agreement to buy Mark's interest. Again, we review the district court's factual findings for clear error and find none.

At trial, Doug testified that he and Brenda had a meeting on November 11, 2015, concerning the value of BD at a time when they were also in negotiations over the value of Rentals and Development. Doug also testified that 5 minutes into the meeting, Brenda said she was "done" and walked out.

But Brenda testified that her son had open heart surgery in Omaha, Nebraska, on November 10, 2015, and that on November 11, she was with him as he recovered at the hospital and was not at any meeting. The district court specifically found Brenda more credible on this point. The court further noted that the evidence supported Brenda's claim that despite having agreed on the value of Rentals and Development, appellees rejected Galloway's valuation and failed to close on the purchase of Mark's interests in Rentals and Development only after the parties could not reach an agreement on the value of BD.

We find no error in the district court's conclusion that these failures amounted to a failure to negotiate in good faith and a breach of the contract to purchase Mark's interests in Rentals and Development.

Appellees also assign that the district court erred in not ordering specific performance of the contract for purchase of Mark's shares. A court cannot award specific performance to the breaching party unless the breach is minor or involves no substantial failure of the exchange.[20] In this case, the court specifically found that the breach was not minor and was a substantial failure of the exchange. As noted above, the breach involved failure to close on the sale after the terms of the

[20] See *Albers v. Koch*, 185 Neb. 25, 173 N.W.2d 293 (1969).

operating agreements regarding that sale were met. We agree that this was not minor and was a substantial failure of the exchange. This assignment of error is without merit.

### (c) Remaining Assignments of Error

Appellees also contend that the district court erred in not adopting the values of its expert as the values for Rentals and Development.

Doug had an appraisal of Development performed for purposes of trial with a valuation date of April 14, 2015. The appraiser set an adjusted value of $860,000 for Mark's one-third interest in Development, with a total value of $4,019,019. The appraiser set an adjusted value of $50,000 for Mark's one-half interest in Rentals, with a total value of $133,129.

There was no error in this determination. As noted above, the record demonstrates that the parties agreed to be bound by the fair market value as determined by Galloway. There is no merit to this assignment of error.

Appellees next assign that the district court erred in ordering them to pay interest on the damages award as of March 30, 2016. Having concluded that Galloway's fair market value was binding; that his appraisal was substantially complete as of November 30, 2015; and that appellees breached the contract to purchase Mark's interests, the district court did not err in concluding that interest should accrue as of March 30, 2016, or 120 days after the determination of fair market value as required by the operating agreements. There is no merit to this assignment of error.

In their final assignment of error, appellees assign that the district court erred in awarding Brenda damages. The primary basis of this assignment of error is appellees' contention that the district court erred in its reliance on Galloway's appraisal. We have previously found no merit to that assertion.

We additionally observe that appellees suggest Galloway's inclusion of the life insurance proceeds on Mark's life was

incorrect and that this affected the valuation of Rentals and Development as discussed above, as well as Brenda's ultimate award of damages. But appellees did not assign as error anything related to the inclusion of the life insurance proceeds, perhaps because the district court agreed with that position and excluded the value of the life insurance when determining Brenda's damages award. Accordingly, we find no merit to this assertion or to appellees' final assignment of error.

## VI. CONCLUSION
The decision of the district court is affirmed.

Affirmed.