IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


TIGHE V. ESTATE OF TIGHE


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STEVE TIGHE, APPELLANT,

V.

ESTATE OF BARBARA BROTHERTON TIGHE, APPELLEE.


Filed February 22, 2022.    No. A-21-274.


Appeal from the District Court for Sarpy County: MICHAEL A. SMITH, Judge. Affirmed.

Heather Voegele Anson and David E. Fuxa, of Voegele Anson Law, L.L.C., for appellant.

Andrew J. Wilson and Terry A. White, of Burnett Wilson Law, L.L.P., for appellee.


MOORE, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Steve Tighe appeals from an order by the district court for Sarpy County following a bench trial which found in favor of the estate of Barbara Brotherton Tighe on Steve's claim of unjust enrichment. For the reasons set forth below, we affirm.

## BACKGROUND

On February 9, 2018, Steve filed a complaint in which he asserted that his father, Jim Tighe, established an investment account that was worth approximately $800,000 at the time of his death. The investment account listed the owners of the account as Jim and his wife, Barbara Brotherton Tighe, as joint owners with right of survivorship. Barbara was Steve's stepmother. Under the terms of Jim's will, Steve was the sole beneficiary of Jim's estate. Steve asserted that near the end of Jim's life, Jim expressed a desire to remove Barbara from the investment account. Steve further alleged that Barbara agreed to execute the paperwork needed to change ownership

- 1 -

of the account; however, Jim died before Barbara was able to execute the paperwork. Steve alleged that upon Jim's death, Barbara took ownership of the funds and had not released any of these funds to Steve; therefore, she was unjustly enriched.

In October 2018, Steve filed a motion for summary judgment. A hearing on this motion was held on November 6. At this hearing, several exhibits were received. Barbara offered into evidence her own affidavit, which the court ultimately received over objection by Steve. The court denied Steve's motion for summary judgment finding that Barbara's affidavit created a genuine issue of fact.

On May 31, 2019, Steve filed a motion to strike the affidavit received at the summary judgment hearing. In this motion, he asserted that in a deposition taken of Barbara, she had provided testimony that contradicted the information contained in her affidavit. Steve asked the court to strike Barbara's affidavit from the record and provide "such other, further and different relief, as this Court deems appropriate." Following a hearing on the motion to strike, the district court denied the motion. The district court indicated that Steve had requested the court to first strike the affidavit and to then reconsider its ruling on the prior motion for summary judgment without relying on Barbara's affidavit. The court denied both forms of relief. However, the court explicitly stated that its ruling was not a decision regarding any future admissibility of Barbara's affidavit and noted that the denial of a motion for summary judgment did not preclude the filing of a subsequent similar motion.

During the pendency of the proceedings, Barbara died. Her estate was then substituted as the defendant in the case.

Steve filed a second motion for summary judgment on June 5, 2020, which the district court overruled following further hearing. The denial of the second motion for summary judgment is not referenced by either party on appeal.

Trial was held on November 12, 2020. Steve and his wife, Peggy Tighe, testified. In addition, Steve's former wife, Terri Straley (Terri), and Jim's former attorney, Tom Kelley, also testified. The deposition testimony of Barbara and Jeremy Friedman, were also received. Friedman was the financial advisor to Jim and managed the investment account at issue.

The evidence at trial revealed that Terri and Steve had a positive relationship with Jim from at least the beginning of Jim and Barbara's marriage in 1997 until Steve and Terri's divorce in 2008. However, following Steve and Terri's divorce, Steve's relationship with Jim and Barbara became strained. Steve and Jim did not speak to each other for approximately 10 years.

Terri, however, maintained a close relationship with both Jim and Barbara even after her divorce from Steve. The evidence established that Jim was not only estranged from Steve, but from his daughters as well. Barbara had two adult children, but neither lived in Nebraska. Terri testified that in 2009, she began handling day-to-day tasks for Jim and Barbara, such as grocery shopping and picking up prescriptions. She continued to spend time with Jim and Barbara and visited them two or three times per week. Over time, Terri was asked to perform more functions which included making bank deposits and helping Jim organize his account statements and bills. She also provided transportation as health issues limited the amount of driving Jim and Barbara engaged in. Eventually Barbara changed her will to add Terri as a beneficiary along with her children. In her deposition, Barbara cited how good Terri had been to them and stated she considered Terri to be a

daughter. Accordingly, Terri acknowledged that if the estate was successful in this case, she would benefit by inheriting a portion of the funds from the investment account in dispute.

Steve rekindled his relationship with Jim in late 2016 and early 2017 after learning that Jim had fallen and was temporarily staying in a skilled nursing/rehabilitation facility. From there, Jim moved into an assisted living facility, and Steve began visiting him there two to three times per week. Despite Jim's desire to return home, Barbara and Terri, following doctor's orders, insisted that he stay at the assisted living facility. Two months later, Barbara moved into the same assisted living facility. Barbara did not move into the same room as Jim because there were not any two bedroom apartments available. Although Jim and Barbara saw each other most days, Jim ate with a group of men and Barbara with a group of women. According to Barbara, this decision was mutual. Steve testified to his father's lack of satisfaction with the separation between them.

The testimony regarding Jim's health in 2017 varied. According to Barbara in her deposition testimony, when Steve appeared back in Jim's life, Jim was "practically dead." Other witnesses testified to a better state of health, but all agreed he was not capable of living independently. Steve became more involved in Jim's life beginning in 2017. For instance, Steve testified that Jim relied on Steve to check on Jim's bank accounts. Despite his condition, Steve took Jim to renew his driver's license and deposit checks in various bank accounts. Jim executed a new will in October 2017. Steve was the sole beneficiary under Jim's will.

The parties presented evidence with respect to Jim's financial accounts. It was undisputed that throughout their marriage, Jim and Barbara maintained separate financial accounts. According to Barbara's testimony, the parties executed a prenuptial agreement wherein they agreed that both were free to distribute their estates as they saw fit. During the marriage, they did maintain a joint checking account from which they paid their household bills. That account was funded from each of their individual accounts. Steve presented evidence that several of Jim's individual bank accounts included Steve's name as a part owner. Steve testified that in September 2017, Jim added Steve's name as the joint owner of one bank account while removing Barbara's name.

The dispute in this case centers on an investment account that Jim owned. Friedman, the account manager, explained that in either 2015 or 2016, Jim decided to add Barbara's name to the account as a joint owner with a right of survivorship. In the spring of 2017, Friedman had moved his business to be associated with a different company. Jim and Barbara signed documents transferring the account to the new financial management company. The documents reflected that the account was to remain held in both of their names with the right of survivorship. When Jim died, in November 2017, the investment account was valued at $812,283.39. Steve testified that prior to his death, Jim expressed to Steve that he wanted to remove Barbara's name, and thus her ownership interest, from the investment account. Steve also recalled that he observed Jim converse with Barbara about removing her from the investment account. Steve explained that Jim contacted his attorney several times to attempt to remove Barbara from the account. Steve also testified that he and Jim contacted Friedman in September 2017 in an attempt to remove Barbara from the account. Kelley, Jim's former attorney, also testified to contacting Friedman about converting the account back to an individual account.

In his deposition, Friedman detailed the conversations he had with Steve and Jim about possibly removing Barbara from the investment account. Friedman recalled speaking to Kelley who asserted that it was a mistake that the investment account had been changed to a joint account.

Kelley requested that Friedman explore whether the investment account could be changed back to an individual account without Barbara's consent. Friedman consulted with his company's compliance officer and determined that certain documents needed to be completed by both Jim and Barbara for her to be removed from the account. According to Friedman, Jim and Steve expressed that they did not want the paperwork mailed to Barbara because they did not feel that Barbara would be willing to complete it. Friedman recalled that from April to November 2017, he had almost weekly conversations with Jim and Steve about attempting to remove Barbara from the account. Friedman explained that because of the constant conversations, his assistant drafted a letter for Barbara that she could read and sign if she wanted to remove herself from the account.

Other evidence revealed the many steps that Steve and Jim took to attempt to remove Barbara from the investment account. Kelley explained that he made a phone call to Friedman to attempt to remove Barbara from the account. According to Steve, Friedman explained to Steve and Jim that because Barbara was a joint owner, she would need to agree to any changes. Steve testified that Jim requested the paperwork to remove Barbara from the investment account. Terri testified that although she received a phone call from Friedman about possibly removing Barbara from the account, there were no actions taken to follow up on this request. Terri also explained that she did not discuss this conversation with Barbara. Although Steve presented a letter that stated Barbara agreed to be removed from the account, the letter was not signed. Friedman explained that his office drafted the letter. Steve conceded that neither Barbara nor Jim ever signed the necessary paperwork that was required to remove Barbara from the investment account. Steve conceded further that at no point did Jim provide the paperwork to Barbara to remove her from the account.

Jim was hospitalized on November 9, 2017, after he suffered a tear in an aneurysm. Steve, his current wife Peggy, Barbara, and Terri all went to the hospital that day to see Jim. On the following day, the parties agree that Steve called Barbara about coming to the hospital to sign the paperwork regarding the account. According to Steve and Peggy, Barbara said that she would not come to the hospital that day but that she would come to the hospital the next day to sign the paperwork. Terri explained that Barbara did not want to go to the hospital because she was afraid of Steve and did not want to be near him. In her deposition, Barbara also stated that she did not trust Steve. Steve testified that Jim also called Barbara that same day and requested that she come to the hospital and sign the documents. In her deposition, Barbara did not recall that conversation with Jim. However, Terri testified that Barbara did tell her Jim had called her that day. Barbara did recall that she did not feel well that day and refused to go the hospital. Steve and Peggy, as well as Terri all testified to conversations with Barbara that day wherein Barbara stated she was unable to come to the hospital. She told Terri (who offered her transportation) that she was exhausted from not sleeping the night before, and simply did not feel well enough to go. According to Terri, Barbara told her that Steve wanted her to come to the hospital and sign paperwork, but she was unsure as to what the paperwork was. Jim died later that day.

Following the bench trial, the district court submitted a written order on March 5, 2021, finding in favor of Barbara's estate. The district court explained that Barbara received an interest in the funds in the investment account upon being made a joint owner of the investment account in 2015. Upon Jim's death, the funds in the investment account passed to Barbara as a matter of law. The district court noted that Steve presented evidence that Jim desired to remove Barbara

from the investment account, but that in order to do so, both Jim and Barbara needed to sign forms acknowledging Barbara's removal from the account. The district court observed that although Jim obtained the necessary forms to execute the change, neither he nor Barbara signed the forms that were needed to execute the change.

The district court then explained that Steve's argument for unjust enrichment relied on an alleged promise from Barbara that she would come to the hospital to sign the appropriate forms. However, the court explained that it found that this evidence was not sufficiently credible and accordingly could not find that this evidence was sufficient to prove the existence of the promise. It further explained that the equities of the case did not support a finding of unjust enrichment. Finally, the district court explained that because Barbara's affidavit was not necessary for the disposition of the case, it need not rule on the admissibility of the affidavit.

Steve appeals to this court.

## ASSIGNMENTS OF ERROR

On appeal, Steve assigns five errors which we consolidate to two. Steve assigns and argues that the district court erred in denying his motion to strike and by finding that Barbara was not unjustly enriched.

## STANDARD OF REVIEW

A quasi-contract claim for restitution is an action at law. *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011). In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony; an appellate court will not reevaluate the credibility of witnesses or reweigh testimony but will review the evidence for clear error. *Benjamin v. Bierman*, 305 Neb. 879, 943 N.W.2d 283 (2020).

## ANALYSIS

*Motion to Strike.*

The main focus of Steve's brief on appeal is that the district court erred in denying his motion to strike Barbara's affidavit from the record. Steve contends that the affidavit was not admissible because there was not an affirmative statement that Barbara was competent to make the affidavit. Steve believes that Barbara was, in fact, not competent to make the affidavit.

We find this argument to be without merit. First, Steve fails to articulate how he was harmed by the district court failing to strike the affidavit from the record. Error without prejudice provides no ground for appellate relief. *Lamar Co. v. Omaha Zoning Bd. of Appeals*, 271 Neb. 473, 713 N.W.2d 406 (2006). The affidavit was received only for purposes of the first motion for summary judgment. Steve concedes that the district court did not rule on the admissibility of the affidavit for trial. In fact, the court specifically stated that the affidavit was not necessary for the disposition of the case. In other words, it was not considered by the court. Accordingly, since the affidavit was not considered by the district court in its final judgment following a trial on the merits of the case and Steve does not explain how he was otherwise harmed by the failure to strike the affidavit, we find that Steve was not harmed by any purported error with respect to the motion to strike.

To the extent that Steve is arguing that the district court would have ruled differently on the first motion for summary judgment had the affidavit been stricken from the record, we likewise find this argument to be without merit. A denial of summary judgment is not reviewable upon appeal and generally becomes moot after a full trial on the merits. *McLain v. Ortmeier*, 259 Neb. 750, 612 N.W.2d 217 (2000). The overruling of a motion for summary judgment does not decide any issue of fact or proposition of law affecting the subject matter of the litigation, but merely indicates that the court was not convinced by the record that there was not a genuine issue as to any material fact or that the party offering the motion was entitled to a judgment as a matter of law. *Id.* After trial, the merits should be judged in relation to the fully developed record, not whether a different judgment may have been warranted on the record at summary judgment. *Id.* Because the affidavit was only received for purposes of summary judgment, Steve's argument with respect to striking the affidavit is essentially requesting us to review a denial of his first motion for summary judgment. The district court made its final judgment following a full trial on the merits which was based on the fully developed record. Accordingly, we find this argument to be without merit.

*Unjust Enrichment.*

The remainder of Steve's argument revolves around the district court's finding that Barbara was not unjustly enriched.

To recover under the theory of unjust enrichment, the plaintiff must allege facts that the law of restitution would recognize as unjust enrichment. *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011). It has long been the rule of this State that unjust enrichment is based on a general principle that one person should not be permitted to unjustly enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated where it is just and equitable that such restitution be made. *Ahrens v. Dye*, 208 Neb. 129, 302 N.W.2d 682 (1981). A person is enriched if he had received a benefit, and he is unjustly enriched if the retention of the benefit would be unjust. *Id.* A claim for unjust enrichment arises when justice and equity require the defendant to disgorge a benefit that he or she has unjustifiably obtained at the plaintiff's expense. *DH-1, LLC v. City of Falls City*, 305 Neb. 23, 938 N.W.2d 319 (2020).

Stated differently, Steve needed to show that (1) Barbara received the money in the investment account, (2) she retained possession of the money, and (3) Barbara, in justice and fairness, ought to give the money from the investment account to Steve. There was no dispute that Barbara received and retained the funds from the investment account. The dispute in this case hinges on whether it would be unjust or unfair for Barbara to retain the funds from the investment account and have the funds pass through her estate.

Steve presented evidence to demonstrate that it would be unfair for Barbara's estate to retain the funds from the investment account. Steve explained that although he was estranged from Jim for approximately 10 years, he had rekindled his relationship with Jim prior to his death. In addition, he was responsible for some day-to-day activities for Jim. Jim changed his will to include Steve as the sole beneficiary. Steve explained that Jim removed Barbara from several of his individual bank accounts and added Steve. Steve also presented evidence that Jim expressed multiple times that he wanted to remove Barbara from the investment account and add Steve. There

were several conversations with Friedman about removing Barbara from the account. In addition, both Steve and Peggy testified that Barbara indicated that she would come to the hospital to sign the paperwork the next day.

However, there was conflicting evidence presented by Barbara. In Barbara's deposition, she expressed that Steve did not come back into Jim's life until Jim was "practically dead." Barbara also stated that when Jim added her to the account that he did so because he wanted her to have the money. She felt no need to give it Steve. With respect to the paperwork to remove Barbara from the account, Friedman explained both Steve and Jim expressed that they did not feel that Barbara would be willing to remove her name from the account. It was undisputed that prior to Jim's death, the paperwork to remove Barbara was never completed by either Jim or Barbara. Additionally, Terri testified that Barbara did not want to go to the hospital to sign any of the paperwork because she was afraid of Steve. Barbara also expressed that she did not trust Steve about signing paperwork. While Barbara did indicate that she planned to come to the hospital the day following Steve's call to her, the only testimony that she intended to do so for the purpose of signing the paperwork was the testimony of Steve and Peggy. The court specifically found that Steve's evidence supporting the existence of a promise to sign the documents releasing her interest in the account was not "sufficiently credible" or of "sufficient weight." As an appellate court we do not reevaluate the credibility of witnesses or reweigh testimony but only review the evidence for clear error. *Benjamin v. Bierman*, 305 Neb. 879, 943 N.W.2d 283 (2020). Given our deference to the district court's findings, we do not find that the district court clearly erred in determining that Barbara was not unjustly enriched by receiving and maintaining the funds from the investment account. In addition, we find no clear error in the district court's conclusion that even if there was a promise, it would not be unjust for Barbara to receive and retain the funds from the investment account. Based on the record before us, we cannot say that the district court clearly erred in finding that Barbara was not unjustly enriched.

## CONCLUSION

We conclude that the district court did not err in determining that Barbara was not unjustly enriched by retaining the funds in the investment account. Therefore we affirm the district court's judgment.

AFFIRMED.